IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

KEVIN De'SHUN BROWN,             )
                                 )
                Petitioner,      )
                                 )
v.                               )          Case No. CIV-09-290-C
                                 )
ERIC FRANKLIN, Warden,           )
                                 )
                Respondent.      )

## REPORT AND RECOMMENDATION

Mr. Kevin Brown is a state inmate requesting issuance of a writ of habeas corpus. The Court should deny the request.

## BACKGROUND

In state court, Mr. Brown was convicted of first degree rape and forcible oral sodomy. *See* Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody at p. 1 (Mar. 17, 2009) ("Petition"). The Oklahoma Court of Criminal Appeals ("OCCA") affirmed,[1] and the Petitioner unsuccessfully sought post-conviction relief.[2]

The present action followed. Mr. Brown alleges violation of state law, the Oklahoma constitution, and the federal constitution through:

- improper bolstering of the victim's testimony,

---

[1]      *Brown v. State*, Case No. F-2006-678 (Okla. Crim. App. Dec. 13, 2007) ("OCCA Opinion on Direct Appeal").

[2]      *See* Order Post Conviction Findings, *State v. Brown*, Case No. CF-2005-585 (Okla. Co. Dist. Ct. Sept. 11, 2008); Order Affirming Denial of Post-Conviction Relief, *Brown v. State*, Case No. PC-2008-947 (Okla. Crim. App. Dec. 8, 2008) ("OCCA Opinion on Post-Conviction Appeal").

- the trial court's failure to give a jury instruction,

- prosecutorial misconduct,

- ineffective assistance of counsel,

- the trial court's refusal to allow challenges to two biased venirepersons,

- insufficiency of evidence, and

- cumulative error.

Petition at pp. 4-11; Brief in Support of Habeas Corpus Petition at pp. 14-34 (Mar. 17, 2009) ("Petitioner's Brief in Support").

## STANDARD FOR HABEAS RELIEF

The applicable standard turns on how the state appellate court treated the underlying issue.

When the state appellate court does not address the merits, the federal district court exercises its independent judgment. *See*, *e.g.*, *Hain v. Gibson*, 287 F.3d 1224, 1229 (10th Cir. 2002).

If the OCCA did rule on the merits, the federal district court bears a "'secondary and limited'" role. *See Castro v. Ward*, 138 F.3d 810, 815 (10th Cir. 1998) (citation omitted). For example, when the state's highest court has denied the claim on the merits, the federal court considers only whether the decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254(d)(1).

2

The threshold issue is whether the Supreme Court has clearly established the constitutional protection underlying the Petitioner's claim.  *See House v. Hatch*, 527 F.3d 1010, 1018 (10th Cir. 2008) ("The absence of clearly established federal law is dispositive under § 2254(d)(1)."), *cert. denied*, __ U.S. __, 129 S. Ct. 1345 (2009).  As the Tenth Circuit Court of Appeals has noted:

> [C]learly established law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case *sub judice*.  Although the legal rule at issue need not have had its genesis in the closely-related or similar factual context, the Supreme Court must have expressly extended the legal rule to that context.

*Id*. at 1016 (footnote & citations omitted).  For this purpose, Supreme Court holdings "must be construed narrowly and consist only of something akin to on-point holdings." *Id*. at 1015.  In the absence of Supreme Court precedents, "a federal habeas court need not assess whether a state court's decision was 'contrary to' or involved an 'unreasonable application' of such law." *Id*. at 1017.

If the underlying constitutional right was clearly established, the federal district court must ask whether the state court decision was contrary to Supreme Court precedent.[3]  These circumstances may exist when the state court had:

- applied a rule that conflicted with governing Supreme Court holdings or

---

[3]     *See Hicks v. Franklin*, 546 F.3d 1279, 1283 (10th Cir. 2008) ("If there is clearly established federal law, we then consider whether the state court decision was contrary to or involved an unreasonable application of it." (citation omitted)).

- reached a conclusion different from the Supreme Court on materially indistinguishable facts.

*See Williams v. Taylor*, 529 U.S. 362, 405-406 (2000) (citation omitted).

If these circumstances are absent, the federal district court must determine whether the state court decision involved an unreasonable application of Supreme Court precedents. *See supra* pp. 2-3. Application of Supreme Court precedent is considered "unreasonable" when the state court unreasonably extends, or refuses to extend, prior decisions. *See House v. Hatch*, 527 F.3d 1010, 1018 (10th Cir. 2008), *cert. denied*, __ U.S. __, 129 S. Ct. 1345 (2009). If prior Supreme Court cases do not "clear[ly] answer . . . the question presented," the habeas court cannot regard the application of federal law as unreasonable. *Wright v. Van Patten*, 552 U.S. 120, 128 S. Ct. 743, 747 (2008) (*per curiam*) (citation omitted).

The reasonableness of the OCCA's application of Supreme Court precedent is affected by its relative specificity. "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004) (citation omitted).

## VIOLATION OF THE OKLAHOMA
## CONSTITUTION AND STATE LAW

In part, Mr. Brown alleges violation of Oklahoma statutes and the state constitution. Petition at p. 6; Petitioner's Brief in Support at pp. 17, 25, 29, 31. But habeas relief does not lie solely for error under state law or the state constitution.[4] Thus, the Petitioner could not

---

[4] *See Davis v. Reynolds*, 890 F.2d 1105, 1109 n.3 (10th Cir. 1989) ("Alternative state claims, whether grounded in state statutes or the State Constitution, are not cognizable under 28 U.S.C.

obtain federal habeas relief even if his conviction had violated the Oklahoma Constitution or state law.

## FEDERAL CLAIM INVOLVING BOLSTERING
## OF THE VICTIM'S TESTIMONY - GROUND ONE

Ms. Sonya Sims testified that the Petitioner had committed rape and forced participation in oral sodomy.  Transcript of Proceedings at pp. 29-32, 40, *State v. Brown*, Case No. CF-05-585 (Okla. Co. Dist. Ct. filed Aug. 21, 2006) ("Trial Transcript"). Thereafter, the evidence included testimony by the nurse that had performed Ms. Sims' physical examination.  *See id.* at p. 74.  The nurse recounted Ms. Sims' description of the assault that she had given during the intake of her medical history.  *Id.* at pp. 75-82. According to the Petitioner, the nurse's testimony created a due process violation by bolstering Ms. Sims' account.  Petition at p. 4; Petitioner's Brief in Support at pp. 14-16.

On independent review, the Court should reject the due process claim.  *See supra* p. 2.[5]

To prevail under a general due process claim, Mr. Brown must show that the testimony was so unfair as to fatally infect the trial.  *See Parker v. Scott*, 394 F.3d 1302,

---

§ 2254(a)." (citation omitted)).

[5]      The OCCA interpreted the claim as "essentially challeng[ing] the admission of evidence of prior consistent statements" and held that the statements were admissible under Oklahoma's hearsay exception for a medical diagnosis.  OCCA Opinion on Direct Appeal at p. 2.  The state court did not squarely address the effect of the testimony on Mr. Brown's right to due process.  *See id.*

1311-12 (10th Cir. 2005) (applying the "general due process" standard to a claim of improper witness vouching). Mr. Brown cannot make such a showing.

At trial, the nurse testified regarding the need for an examining practitioner to take a full history from an alleged rape victim. *See* Trial Transcript at pp. 75-77. This inquiry includes a full medical history and a detailed description of the alleged rape. *Id.* at pp. 76-77. According to the nurse, the practitioner then knows what to look for during the physical examination. *See id.* When asked about Ms. Sims' history, the nurse essentially repeated Ms. Sims' earlier testimony. *See id.* at pp. 77-78, 80-81.

Mr. Brown's attorney objected to the testimony on grounds that it was hearsay, was cumulative, and constituted an undue burden. *Id.* at pp. 78-80. The "hearsay" and "cumulative" objections were based on the Oklahoma Evidence Code, and the "undue burden" objection was inexplicable.[6] The trial court overruled the objections. *Id.* at p. 80.

The Oklahoma Evidence Code authorizes exclusion of testimony that is cumulative or hearsay. *See* Oklahoma Evidence Code, Okla. Stat. tit. 12 §§ 2403, 2802. On these issues, however, the federal district court is bound by the Oklahoma courts' application of state law. *See Parker v. Scott*, 394 F.3d 1302, 1319 (10th Cir. 2005) (noting that on habeas review, the state courts' interpretation of state law is binding on the federal court). Thus, the federal

---

[6] The existence of an undue burden could affect discovery rather than admissibility. *See* Oklahoma Discovery Code, Okla. Stat. tit. 12 § 3226(C)(1). The attorney may have intended to object on grounds of "unfair surprise" rather than "undue burden." *See* Oklahoma Evidence Code, Okla. Stat. tit. 12 § 2403.

district court cannot grant habeas relief on grounds that the nurse's testimony had been cumulative or that it had constituted hearsay.[7]

The Petitioner would only be entitled to habeas relief if the trial court's handling of the evidentiary objections had resulted in a fundamentally unfair trial. *See Parker v. Scott*, 394 F.3d 1302, 1310-11, 1313-14 (10th Cir. 2005) (applying the "fundamental fairness" test to a habeas claim involving improper bolstering); *see also supra* pp. 5-6.  In the habeas petition and supporting brief, Mr. Brown challenges the fairness of the nurse's testimony on grounds that it had bolstered the account of the alleged victim. *See supra* p. 5.  Ordinarily, even if the evidence had constituted improper bolstering under Oklahoma law, the evidentiary error would not justify habeas relief.[8]  However, the Court may assume *arguendo* that the evidentiary error could result in sufficient unfairness to implicate the Fourteenth Amendment's Due Process Clause.[9]  Even with this assumption, the Court must begin with

---

[7]    *See Espinoza v. Estep*, 276 Fed. Appx. 781, 787 (10th Cir. May 1, 2008) (unpublished op.) (holding that even if hearsay evidence had been improperly admitted in state court, the issue would not constitute any part of the federal court's habeas review), *cert. denied*, __ U.S. __, 129 S. Ct. 256 (2008); *Carson v. Collins*, 993 F.2d 461, 465 (5th Cir. 1993) ("stating that recorded statements "constituted at worst cumulative evidence, admission of which does not warrant habeas corpus relief" (footnote omitted)); *see also supra* p. 6.

[8]    *See Osorio v. Conway*, 496 F. Supp. 2d 285, 299 (S.D. N.Y. 2007) ("Admissibility of hearsay evidence and 'bolstering' are matters of state law and therefore are not cognizable under federal habeas review." (citations omitted)); *see also supra* p. 6.

[9]    Some courts would regard this assumption as overly generous.  For example, one federal district court in the Second Circuit stated:

[The habeas petitioner's claim] is . . . not cognizable on federal habeas review. Courts in this Circuit [have] found that "[a]lthough bolstering is a practice prohibited in various states, including New York, the practice is not forbidden by the Federal Rules of Evidence and is not sufficiently prejudicial to deprive a defendant of his due

the meaning of "bolstering" under Oklahoma law to determine whether this principle would have required exclusion of the nurse's testimony.

The term "bolstering" is not defined in the Oklahoma Evidence Code.  *See Nickell v. State*, 885 P.2d 670, 677 (Okla. Crim. App. 1994) (Lumpkin, J., concurring) ("the term 'bolstering' is not specifically defined in the Evidence Code").  As a result, Oklahoma courts have used the term "bolstering" only to restrict rehabilitation of a witness before his credibility has been attacked.[10]

---

process right to a fair trial."  It has been observed that "this Circuit has never regarded the practice [of bolstering] as inimical to trial fairness."

*Campbell v. Poole*, 555 F. Supp. 2d 345, 371 (W.D. N.Y. 2008) (citations & footnote omitted).

[10]     One judge of the Oklahoma Court of Criminal Appeals explained:

[The concept of "bolstering"] is addressed within the provisions of 12 O.S.1991, § 2608, as it relates to reputation or opinion evidence of character of a witness for truthfulness or untruthfulness.  However, under the facts of this case, the Court is not presented with opinion evidence relating to a witness, but the very basis of the witnesses' testimony.  At common law, the concept of "bolstering" was addressed within the term "rehabilitation".  The reason was this type of evidence for truthfulness was generally excluded until the witnesses' credibility was attacked.  Therefore, "bolstering" constitutes nothing more than "preemptive rehabilitation" of a witness.  In other words, it is the timing of the evidence based on the anticipated attempt to impeach a witness which is at issue and, to a degree, it is addressed in Section 2608.  However, our jurisprudence has vacillated on whether the predicates ultimately codified in the Evidence Code must be followed, especially as it relates to non-opinion evidence.

*Nickell v. State*, 885 P.2d 670, 677-78 (Okla. Crim. App. 1994) (Lumpkin, J., concurring) (citations & footnote omitted); *accord United States v. Green*, 258 F.3d 683, 692 (7th Cir. 2001) ("'bolstering' is the practice of building up a witness's credibility before impeachment has been attempted" (citations omitted)).

The nurse's recitation of Ms. Sims' account did not involve rehabilitation of her credibility or constitute preemptive bolstering of her account. Instead, the nurse summarized Ms. Sims' account when asked the type of medical history that had been taken. Trial Transcript at pp. 77-82; *see supra* p. 6.[11] In doing so, the nurse did not testify regarding the believability of Ms. Sims. Thus, the nurse's account would not have constituted "bolstering" as that term is used in the Oklahoma courts.

As reflected in the defense attorney's objection, the nurse's account could be considered "cumulative" in light of the duplication with Ms. Sims' testimony. But because

---

[11]   The Ninth Circuit Court of Appeals addressed a similar issue in *United States v. Gonzalez*, 533 F.3d 1057 (9th Cir. 2008). There the defendant was charged with sexual misconduct involving three women. *See United States v. Gonzalez*, 533 F.3d at 1058. A nurse examined one of the victims, who said during a medical examination that she had been forced to engage in oral copulation with the defendant. *See id*. at 1062. The federal district court held that the testimony was admissible under the hearsay exception for statements made for medical diagnosis or treatment. *See id*. The federal appeals court upheld the ruling and stated:

> True, [the nurse] was collecting evidence, but that forensic function did not obliterate her role as a nurse, in a hospital, performing a medical examination of a victim of a sexual assault. It would have been unprofessional for [the nurse] to have treated [the female victim] without eliciting an account of what had happened to her. We conclude that the district court did not abuse its discretion in admitting [the nurse's] statement under Rule 803(4) [the hearsay exception for statements made for purposes of medical diagnosis or treatment].

*Id*.; *accord United States v. Bercier*, 506 F.3d 625, 630 (8th Cir. 2007) (holding that a nurse's testimony regarding a report of sexual abuse "was clearly admissible under Rule 803(4), the hearsay exception for statements made for the purpose of obtaining medical diagnosis or treatment").

the jury had already heard Ms. Sims' testimony regarding her account, the nurse's repetition likely did not prejudice the jury.[12]

Even if the nurse's repetition of the account could have been misinterpreted, the trial judge attempted to ensure fairness by instructing the jury that the testimony could not be considered as evidence of any disputed facts.

For example, in overruling defense counsel's objection, the judge gave a contemporaneous instruction about the nurse's testimony:

> Ladies and gentlemen of the jury, the testimony that this witness is giving us about the history that she took from the victim is not offered to show you or to indicate to you the facts that are in controversy here.
>
> Her testimony is offered to you for the purpose of describing what treatment and what she did as part of her examination. Does that make sense to you? All right.

Trial Transcript at p. 80.

At the end of the trial, the judge again instructed the jury that the nurse's testimony had been admitted solely to facilitate evaluation of her testimony and that it was not to be considered for any other purpose. Instructions to the Jury, Instruction No. 8, *State v. Brown*, Case No. CF-05-585 (June 7, 2006) ("Jury Instructions").

---

[12] *See United States v. Wipf*, 397 F.3d 677, 682 (8th Cir. 2005) (stating that a doctor's testimony under the hearsay exception for "medical diagnosis and treatment" did not likely influence the jury because it had "mirrored the testimony" by the two alleged victims of sexual abuse and "was merely cumulative"); *see also Petrocelli v. Gallison*, 679 F.2d 286, 292 (1st Cir. 1982) ("A mere reiteration via the hospital record that Petrocelli or his wife had told Dr. Swartz that his nerve was cut during Dr. Gallison's operation would have added little beyond corroborating what Mrs. Petrocelli had already told the jury.").

"The jury is presumed to follow its instructions." *Bland v. Sirmons*, 459 F.3d 999, 1015 (10th Cir. 2006) (citing *Weeks v. Angelone*, 528 U.S. 225, 234 (2000)).  With this presumption, the nurse's restatement of the victim's description of the rape could not have fatally infected the trial with unfairness.[13]  As a result, the nurse's limited testimony about Ms. Sims' account could not have resulted in a deprivation of due process and the Court should reject the related habeas claim.[14]

### FEDERAL CLAIM INVOLVING THE TRIAL COURT'S FAILURE TO GIVE A PROPOSED JURY INSTRUCTION - GROUND TWO

In his second proposition, Mr. Brown alleges that the trial court had failed to give a requested jury instruction.  Petition at p. 5; Petitioner's Brief in Support at pp. 16-17.  According to the Petitioner, the jury should have been instructed that "consent [was] an affirmative defense to rape."  Petition at p. 5.  The OCCA rejected this theory on direct appeal, concluding that "further instructions on consent were unnecessary" and that "[t]he uniform jury instructions on the elements of rape . . . [were] sufficient to inform the jury that consent is incompatible with a finding of guilt."  OCCA Opinion on Direct Appeal at p. 2.  The OCCA's determination was reasonable under Supreme Court precedents, and habeas relief is unavailable on this ground.

---

[13]  *See Jackson v. Shanks*, 143 F.3d 1313, 1323 (10th Cir. 1998) (rejecting a habeas claim based on a presumption that the jury would have followed the trial court's instruction, which "would have cured any error").

[14]  *See Hackworth v. Beto*, 434 F.2d 852, 854 (5th Cir. 1970) (*per curiam*) (holding that an apparent trial error involving introduction of a witness' bolstering testimony would not constitute a deprivation of due process because the proceedings remained "fundamentally fair").

To prevail, Mr. Brown must demonstrate that the trial court's failure to give the instruction had "'render[ed] the trial so fundamentally unfair as to cause a denial of a fair trial in the constitutional sense . . . .'" *Webber v. Scott*, 390 F.3d 1169, 1180 (10th Cir. 2004) (citation omitted). And, the Petitioner bears an "especially great" burden because he is relying on the omission of an instruction, rather than the provision of an erroneous instruction. *Tyler v. Nelson*, 163 F.3d 1222, 1227 (10th Cir. 1999).

Mr. Brown cannot satisfy his burden. The Petitioner seems to believe that the instruction on first degree rape does not adequately communicate the effect of consent as a defense to the crime. He is incorrect.

The trial court instructed the jury that Mr. Brown could not be convicted unless the State had proven the following elements:

> **FIRST:** Sexual intercourse;
>
> **SECOND:** With a person who was not the spouse of [Mr. Brown];
>
> **THIRD:** Where force or violence was used against [Ms. Sims] and [Mr. Brown] had the apparent power to carry out the threat of force or violence.

Jury Instructions, Instruction No. 12; *see* OUJI-CR 4-120 (2d ed.); *see also infra* p. 28.

This instruction stated the applicable law[15] and provided that a "rape" would have had to include force or violence. Thus, if sexual intercourse had taken place through mutual

---

[15]     *See* Okla. Stat. tit. 21 § 1111(A)(3).

12

consent, the jury could not have found Mr. Brown guilty of rape based on the instructions that were given.

A similar issue arose in *United States v. Martin*, 528 F.3d 746 (10th Cir. 2008), *cert. denied*, __ U.S. __, 129 S. Ct. 433 (2008).  There the defendant was charged with rape.  *See United States v. Martin*, 528 F.3d at 748.  The defendant requested a jury instruction on the victim's consent to the sexual act, and the judge declined to give the instruction.  *See id.*  The defendant was convicted.  *See id.*  On appeal, the defendant argued that the trial court had committed error in the failure to instruct the jury on consent.  *See id.*  This argument was rejected on appeal.  *Id.*

In rejecting the argument, the Tenth Circuit Court of Appeals relied on the actual instructions, which informed the jury that the defendant had committed rape only if he caused the victim to engage in a sexual act "by using force . . . or by threatening or placing [her] in fear that she would be subjected to death or serious bodily injury."  *Id*. at 752.  Even though the judge did not use the word "consent," the federal appeals court reasoned that "the instructions taken as a whole correctly convey[ed] that the sex must be nonconsensual, and therefore 'accurately informed the jury of the governing law.'"  *Id.* (citation omitted).  The nonconsensual nature of the required act was encompassed in the language requiring the government to prove that "force or serious threat . . . [had been] the cause of the sex act."  *Id.*

*United States v. Martin* compels rejection of Mr. Brown's habeas claim.  Like the instructions in *Martin*, the language here conveyed the need for the prosecution to prove that the sexual act had resulted from force or violence.  With this type of language the absence of a specific reference to consent was not fatal in *Martin*, and the same is true here.

The lack of a specific consent instruction did not deprive Mr. Brown of fundamental fairness in the trial, and the Court should reject the habeas claim.

FEDERAL CLAIM INVOLVING PROSECUTORIAL
MISCONDUCT - GROUND THREE

Mr. Brown alleges four instances of prosecutorial misconduct:

- comment on the Petitioner's silence,

- pitting Mr. Brown's credibility against the believability of the other witnesses,

- calling the Petitioner a liar and questioned his veracity, and

- injecting a personal opinion of Mr. Brown's guilt.

Petition at p. 6; Petitioner's Brief in Support at pp. 17-21.  On direct appeal, the OCCA held that the prosecutor's comment regarding Mr. Brown's silence constituted harmless error. OCCA Opinion on Direct Appeal at pp. 3-4.  The remaining allegations were rejected as "fair comments on the evidence."  *Id.* at pp. 2-3.

I.      Standard for Habeas Relief on Claims Involving Prosecutorial Misconduct

The Supreme Court has unambiguously acknowledged that the Fourteenth Amendment's Due Process Clause entitles a defendant to fundamental fairness in the prosecutor's conduct at trial.[16]  Thus, on the claims rejected by the OCCA, the federal district court must determine whether the OCCA had acted reasonably in its application of Supreme Court precedent.  *See supra* pp. 2-4.  This inquiry focuses on whether the prosecutor's conduct had violated a specific constitutional right[17] or "infected the trial with [such] unfairness as to make the resulting conviction a denial of due process."[18]

II.     The Prosecutor's Comment on the Petitioner's Silence

The prosecutor elicited testimony that Mr. Brown had stopped writing a statement for the police and asked for an attorney.  *See* Trial Transcript at pp. 106-107.  According to the OCCA, the prosecutor had committed misconduct by commenting on Mr. Brown's silence.  OCCA Opinion on Direct Appeal at p. 3.  However, the state appellate court added:

> The State presented strong direct evidence of [Mr. Brown's] guilt. [Mr. Brown's] conduct at the crime scene and his admittedly false statements to police - before availing himself of the protections of *Miranda* - were also thoroughly incriminating, as was his trial testimony.  Despite this, the jury

---

[16]     *See Johnson v. Mullin*, 505 F.3d 1128, 1159 (10th Cir. 2007), *cert. denied*, __ U.S. __, 128 S. Ct. 2933 (2008); *see also Greer v. Miller*, 483 U.S. 756, 765 (1987) ("This Court has recognized that prosecutorial conduct may 'so infec[t] the trial with unfairness as to make the resulting conviction a denial of due process.'" (citation omitted)).

[17]     *See Matthews v. Workman*, ___ F.3d ___, 2009 WL 2488142, Westlaw op. at 8 (10th Cir. Aug. 17, 2009) (to be published) (stating that a prosecutor's remarks can create constitutional error by prejudicing a specific right, such as the privilege against compulsory self-incrimination).

[18]     *Fero v. Kerby*, 39 F.3d 1462, 1473 (10th Cir. 1994) (citation omitted).

acquitted [Mr. Brown] in Count 2, in which the proof was somewhat weaker. We find the prosecutor's error could not have contributed to the jury's decision to convict [Mr. Brown] of the remaining counts. This error was harmless beyond a reasonable doubt.

OCCA Opinion on Direct Appeal at p. 4.

The Court may assume *arguendo* that the question-and-answer violated Mr. Brown's right to remain silent. Even with this assumption, however, the constitutional violation would have been harmless.[19]

To assess harmlessness on habeas review, the Court must decide only whether the trial error had a "substantial and injurious effect" on the outcome. *See Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). "[A] 'substantial and injurious effect' exists when the court finds itself in 'grave doubt' about the effect of the error on the jury's verdict." *Bland v. Sirmons*, 459 F.3d 999, 1009 (10th Cir. 2006) (citation omitted).

Before the prosecutor asked a single question, the jury had already learned from defense counsel about Mr. Brown's termination of the written statement and request for an attorney. In his opening statement, Mr. Brown's attorney had remarked:

So Kevin [Brown] signed a waiver and he started to write out the statement, the statement that the State has told you about where he said, "I went over there, we went to the bedroom and we had consensual sex."

And in the middle of the statement you can actually see on the paper where the pencil stopped. At that point he said, "I would like to see my lawyer." And that was the last time Kevin spoke until he takes the stand and

---

[19]    *See Hamilton v. Mullin*, 436 F.3d 1181, 1187-88 (10th Cir. 2006) ("any error in permitting the prosecutor to comment upon the defendant's right to silence is subject to a harmless error analysis" (citation omitted)).

tells you what happened that night.  And you've just heard what Kevin is going to tell you.

Trial Transcript at pp. 25-26.  As a result, even if the prosecutor had never elicited the testimony,  the jury would have known of Mr. Brown's termination of his written statement and request for an attorney.  In these circumstances, the Court should regard any technical Fifth Amendment violation as harmless.  The prosecution's disclosure of Mr. Brown's silence and request for a lawyer could not have affected the outcome, as the jury had already learned the same fact from the defense attorney's opening statement. *See United States v. Celio*, 230 Fed. Appx. 818, 828-29 (10th Cir. Apr. 30, 2007) (unpublished op.).[20]

III.   <u>Fundamental Fairness with the Prosecutor's Questioning and Closing Argument</u>

Mr. Brown also complains about the prosecutor's questioning of various witnesses and comments on credibility in closing argument.  Petition at p. 6; Petitioner's Brief in Support at pp. 17-26.  On these issues, the OCCA concluded that the prosecutor had not committed misconduct.  OCCA Opinion on Direct Appeal at pp. 2-3;[21] *see infra* p. 22.  Here

---

[20]     In *United States v. Celio*, the defendant was a doctor.  *See United States v. Celio*, 230 Fed. Appx. 818, 821 (10th Cir. Apr. 30, 2007) (unpublished op.).  The Tenth Circuit Court of Appeals acknowledged error by the prosecutor in eliciting testimony that the DEA had begun to investigate the doctor after another patient had complained.  *Id*. at 828-29.  But the court regarded the error as harmless because the defendant had already remarked in his opening statement about his call to the DEA regarding the same patient who had voiced the complaint.  *Id*.

[21]     The OCCA analyzed the issue under the "plain error" standard.  OCCA Opinion on Direct Appeal at p. 2.  In rejecting the claim, however, the OCCA commented: "The prosecutor's questions were generally proper and the arguments were fair comments on the evidence."  *Id.* (citation omitted); *see supra* p. 14; *infra* p. 22 & note 43.

the issue is whether the OCCA's conclusion was contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court.  *See supra* pp. 2-4. The federal district court should answer in the negative.

A.     Whether "Clearly Established" Federal Law Exists

As noted above, the threshold issue is whether "clearly established" federal law existed under the Supreme Court's past decisions.  *See supra* p. 3.  The federal district court should answer in the affirmative because the Supreme Court had recognized a due process entitlement to fundamental fairness at trial.  *See supra* p. 15.  As a result, the federal district court must consider whether the state court's decision was contrary to, or an unreasonable application of, the clearly established federal law.  *See supra* pp. 2-4.

B.     Whether the State Court's Decision Was "Contrary To" Clearly Established Federal Law

The next inquiry is whether the OCCA's treatment of the Petitioner's examples would be contrary to Supreme Court precedents.  *See supra* pp. 3-4.  The Supreme Court has not found a due process violation from a prosecutor's: (1) questioning of a defendant about the accuracy of the accounts given by other witnesses, or (2) reference to the defendant's testimony as a lie.  As a result, the OCCA's resolution of the misconduct claim was not contrary to Supreme Court precedent.  *See supra* pp. 3-4.

C.     Whether the State Court Decision Constituted an "Unreasonable Application" of Clearly Established Federal Law

The resulting issue is whether the OCCA's treatment of the Petitioner's examples involved an unreasonable application of Supreme Court precedent. *See supra* p. 4. As noted above, this inquiry is affected by the generality or specificity of the Supreme Court's legal standard. *See supra* p. 4. For due process claims involving prosecutorial misconduct, the Supreme Court has articulated a general test involving fundamental fairness.[22] As a result, the federal district court must apply the AEDPA's deferential standard of review with recognition of leeway in the OCCA's application of the Supreme Court standard.[23]

Use of Questions Allegedly Designed to Force the Petitioner to Characterize the Other Witnesses as Liars

Ms. Sims and her cousin, Ms. Renee Hagler, testified before the Petitioner. Trial Transcript at pp. 27-53. According to Mr. Brown, the prosecutor asked questions designed to force him to call Ms. Sims and Ms. Hagler "liars." Petitioner's Brief in Support at p. 19.

---

[22]    *See supra* p. 15; *see also Johnson v. Mullin*, 505 F.3d 1128, 1148 (10th Cir. 2007) (holding that because the Supreme Court's prohibition against the knowing use of false evidence was inapplicable, the "clearly established" federal law was simply "the general due process right to a fair trial that has been identified by the Supreme Court in other contexts" (citations omitted)), *cert. denied*, __ U.S. __, 128 S. Ct. 2933 (2008).

[23]    *See Dagley v. Russo*, 540 F.3d 8, 18 (1st Cir. 2008) ("where the applicable rule is general in nature, such as the *Donnelly* fundamental unfairness standard [for consideration of a due process challenge to a prosecutor's closing argument], state courts have 'more leeway ... in reaching outcomes in [their] case-by-case determinations'" (citation omitted)), *cert. denied*, __ U.S. __, 129 S. Ct. 933 (2009); *see also Nicklasson v. Roper*, 491 F.3d 830, 836 (8th Cir. 2007) (noting that "a wide range of latitude" is appropriate for the state courts, under the AEDPA, in light of the "indeterminate" nature of a "rule of decision" hinging on "the 'essential demands of fairness'" (citation omitted)).

The OCCA's resolution of this issue was not an unreasonable application of Supreme Court precedents.

Mr. Brown was not asked whether Ms. Sims or Ms. Hagler was lying. *See* Trial Transcript at pp. 127-29, 136-38, 141-42. Instead, the prosecutor referred to evidence already presented and asked Mr. Brown whether he agreed or disagreed with the accounts presented earlier by Ms. Sims and Ms. Hagler. *See id.* Federal appellate courts have approved of similar questioning about the areas of agreement or disagreement with other testimony,[24] and the Supreme Court has never addressed the issue. As one court explained: "Asking a witness whether a previous witness who gave conflicting testimony is 'mistaken' highlights the objective conflict without requiring the witness to condemn the prior witness as a purveyor of deliberate falsehood, i.e., a 'liar.'" *United States v. Gaind*, 31 F.3d 73, 77 (2d Cir. 1994).

The Tenth Circuit Court of Appeals has addressed whether a court commits plain error when it allows a prosecutor to cross-examine the defendant by asking her whether law enforcement officers had lied in their testimony. *United States v. Williamson*, 53 F.3d 1500, 1521-23 & n.13 (10th Cir. 1995). The Tenth Circuit Court of Appeals answered in the negative, holding that allowance of the prosecutor's cross-examination "did not constitute plain error." *Id*. at 1523.

---

[24]     *See United States v. Robinson*, 473 F.3d 387, 396 n.11 (1st Cir. 2007); *United States v. Gaind*, 31 F.3d 73, 76-77 (2d Cir. 1994); *see also United States v. Williams*, 343 F.3d 423, 437-38 (5th Cir. 2003) (rejecting a claim of prosecutorial misconduct based on "a series of rhetorical questions" designed to force the defendant "to call the other witnesses liars").

Under *Williamson*, the federal district court should reject Mr. Brown's habeas claim. As noted above, the issue is whether the OCCA unreasonably applied Supreme Court precedent. *See supra* p. 4.  The Supreme Court has never found a due process violation from questions involving agreement or disagreement with other witnesses' accounts.  *See supra* p. 20.  Because defense counsel did not object at trial,[25] the OCCA reviewed the issue only for plain error.[26]  As noted above, the Tenth Circuit Court of Appeals held in *Williamson* that due process had not been denied when the trial court allowed even more aggressive cross-examination, involving questions about whether law enforcement officers had lied in their testimony.  *See supra* p. 20.  This determination has not been called into question by any subsequent Supreme Court decisions.  As a result, the OCCA's allowance of far milder questioning of Mr. Brown constituted a reasonable application of Supreme Court precedent.

In these circumstances, the federal district court should reject the habeas claim involving the prosecutor's questions to Mr. Brown about the accounts given by other witnesses.

### The Prosecutor's Question Suggesting that Mr. Brown Was a Liar

According to Mr. Brown, a question in the cross-examination "impl[ied] that he was a liar."  Petitioner's Brief in Support at p. 24.  The OCCA's resolution of this issue did not constitute an unreasonable application of Supreme Court precedents.

---

[25]     *See* Trial Transcript at pp. 127-29, 136-38.

[26]     OCCA Opinion on Direct Appeal at p. 2.

The Petitioner's contention is based on a single question during the cross-examination. Mr. Brown had just stated that while on the porch, Ms. Sims told an officer that she had been raped. Trial Transcript at pp. 145-46. Then, Mr. Brown stated that he had "looked at [Ms. Sims] and . . . was like, 'What, I raped you?'" *Id.* at p. 146. With this version of events, the prosecutor asked: "So now there's further conversation between you and Sonya in front of a police officer when you're saying, 'What, I raped you?' And the officer still doesn't hear that?" *Id.* Although the judge overruled an objection, Mr. Brown never answered the question. *See id.* at p. 147. Instead, the prosecutor rephrased the question and asked: "So, the officer still doesn't hear you conversing with Sonya, 'What do you mean I raped you,' right?" *Id.*

Reviewing for plain error, the OCCA rejected the identical argument and remarked that "[t]he prosecutor's questions were generally proper." OCCA Opinion on Direct Appeal at pp. 2-3; *see supra* p. 17. The inquiry on habeas review is whether the OCCA's rejection of the habeas claim involved an unreasonable application of Supreme Court precedents. *See supra* p. 4. The federal district court should answer in the negative.

The prosecutor did not call Mr. Brown a "liar." Mr. Brown testified that the police officer had not heard Ms. Sims' accusation of rape,[27] and the prosecutor's question on cross-examination went to the plausibility of this account. This type of inquiry does not run afoul

---

[27]    Trial Transcript at pp. 143, 145-46.

of any due process protections recognized by the Supreme Court.[28]  Thus, the OCCA's

rejection of the claim entailed a reasonable application of Supreme Court precedents.[29]

> ### The Prosecutor's Exploitation of Mr. Brown's Confusion Over the Term "Dispute"

The Petitioner argues that the prosecutor had taken advantage of a failure to

understand the word "dispute."  Petitioner's Brief in Support at pp. 21-23.  This argument

is invalid.

Although the Petitioner complains of exploitation about his misunderstanding of the

term "dispute," he could and did answer the prosecutor's questions by saying that he did not

know the meaning of the word.  *E.g.*, Trial Transcript at pp. 121-23.

On direct examination, Mr. Brown testified that he had engaged in vaginal sex with

Ms. Sims.  *Id*. at p. 116.  Thus, the prosecutor began her cross-examination by confirming

this testimony.  Her opening question was: "Sir, just so we're clear, you're not disputing that

you in fact on January 25th, 2005, put your penis in the vagina of Sonya Sims?"  *Id*. at pp.

---

[28]     *See United States v. Demarest*, 570 F.3d 1232, 1242 (11th Cir. 2009) ("The prosecutor was entitled to cross-examine [the defendant] after he decided to testify, and a cross-examination necessarily entails testing the plausibility of a defendant's account." (citation omitted)).

[29]     *See Sassounian v. Roe*, 230 F.3d 1097, 1105-1107 (9th Cir. 2000) (holding that a prosecutor's cross-examination questions to a crucial defense witness, which included accusations of lying, did not constitute a due process violation); *see also United States v. Franklin-El*, 555 F.3d 1115, 1125-26 (10th Cir. 2009) (holding that no denial of due process took place when the prosecutor stated that the defense testimony involved "whoppers" because the comment had been grounded in testimonial inconsistencies), *cert. denied*, __ U.S. __, 129 S. Ct. 2813 (2009); *Bland v. Sirmons*, 459 F.3d 999, 1025 (10th Cir. 2006) ("we have . . . rejected claims of prosecutorial misconduct where the prosecution referred to a defendant as a liar on account of irreconcilable discrepancies between the defendant's testimony and other evidence in the case" (citations omitted)).

121-22.  The Petitioner asked what the prosecutor meant by the word "dispute."  *Id*. at p. 122.

The prosecutor attempted to clarify the question, asking Mr. Brown to confirm the testimony

that he had just given on direct examination in response to his lawyer's question: "You're

agreeing that that happened?"  *Id*.  The Petitioner answered: "No, it didn't happen."  *Id*.  In

light of the contradiction with the Petitioner's direct examination, the prosecutor provided

an opportunity to clarify.  The ensuing questions and answers were:

> Q.     You didn't put your penis in her vagina?
>
> A.     Yes, we had consensual sex but I didn't.
>
> Q.     So my question is, you aren't disputing that you put your penis in Sonya's vagina?
>
> A.     No, ma'am.

*Id*.

A similar exchange took place in the questioning about whether Mr. Brown and Ms.

Sims had engaged in oral sex.  On direct examination, Mr. Brown testified that they had

engaged in oral sex.  *Id*. at p. 118.  Thus, on cross-examination, the prosecutor asked Mr.

Brown: "So you aren't disputing that your penis was in [Ms. Sims'] mouth?"  *Id*. at p. 123.

He answered: "Yes."  *Id*.  Apparently sensing ambiguity from a positive answer to a question

asked in the negative, the prosecutor sought clarification: "You aren't disputing it, are you?"

*Id*.  The Petitioner did not understand the question and asked what the prosecutor meant.  *Id*.

The prosecutor answered: "That it happened."  *Id*.  And, Mr. Brown responded: "Yes, I had

oral sex with her, yes."  *Id*.

24

The exchanges do suggest Mr. Brown's confusion over the term "dispute." However, in each of the passages cited in his brief, the Petitioner asked for clarification and the prosecutor provided it. *See supra* pp. 23-24. Mr. Brown ultimately testified on both direct examination and cross-examination that he had engaged in vaginal and oral sex with Ms. Sims. *See supra* pp. 23-24. The transcript does not support the Petitioner's characterization of the questioning as exploitation of his confusion over the term "dispute."

As a result, the OCCA reasonably concluded that these comments had not constituted prosecutorial misconduct. *See supra* p. 17. This conclusion did not involve an unreasonable application of any Supreme Court decisions. *See supra* p. 4.

IV.     Inability to Review the Petitioner's Allegation that the Prosecutor Had Given a Personal Opinion of Guilt

Mr. Brown also asserts that the prosecutor had given her personal opinion about Mr. Brown's guilt. Petitioner's Brief in Support at p. 20. However, the Petitioner does not provide any examples, and none are readily apparent. Without further information, the Court cannot conduct any meaningful review over the Petitioner's assertion.[30]

---

[30]     *See Daniel v. Wyoming Department of Corrections State Penitentiary Warden*, 208 F.3d 225, 2000 WL 216616, Westlaw op. at 1 (10th Cir. Feb. 23, 2000) (unpublished op.) ("The allegation of prosecutorial misconduct lacks specificity, and therefore amounts to a conclusory argument that cannot suffice to demonstrate a violation of [the petitioner's] constitutional right to a fair trial."); *see also Humphreys v. Gibson*, 261 F.3d 1016, 1022 n.2 (10th Cir. 2001) (rejecting habeas allegations because they were "conclusory" (citation omitted)).

## FEDERAL CLAIM INVOLVING DENIAL OF DUE PROCESS
## THROUGH THE USE OF BIASED JURORS - GROUND FIVE

In ground five, Mr. Brown alleges a constitutional violation through the participation of biased jurors. Petition at p. 9; Petitioner's Brief in Support at pp. 31-32. According to the Petitioner, the trial judge refused to "dismiss 'for cause' or allow the Petitioner to exercise his peremptory challenges on the two jurors who [had] told of past experiences who [sic] situations were very similar to his." Petitioner's Brief in Support at p. 31. Mr. Brown claims that he is unaware of the jurors' names, but identifies the first juror as the one that "said her dad molested her sister and then . . . committed suicide." *Id.* The second juror is identified as the one that "said a[] friend raped her." *Id.* The Court should reject the habeas claim because these individuals did not participate on the jury.[31]

The first person is Michelle Brunswick. During *voir dire*, Ms. Brunswick testified that her father had molested her sister and that he had committed suicide. *See* Transcript of Proceedings at p. 46, *State v. Brown*, Case No. CF-05-585 (Okla. Co. Dist. Ct. June 5, 2006). Mr. Brown's attorney used a peremptory challenge on Ms. Brunswick, and she did not serve on the jury. *See id.* at p. 166.

The identity of the second individual is unclear, as no venireperson stated that she had been raped by a friend. Mr. Brown might be referring to Marie Moreland or Gloria Bond, as both stated that they had friends who had been raped. *See id.* at pp. 47-49. But the

---

[31] The OCCA did not review this claim on the merits. *See* OCCA Opinion on Post-Conviction Appeal, *passim*.

Petitioner's attorney struck both of these potential jurors, and they did not serve on the jury. *See id.* at pp. 166-67.

The record belies Mr. Brown's allegation that the trial judge had disallowed peremptory challenges on two biased venirepersons.  Thus, the Court cannot grant habeas relief on this ground.[32]

### FEDERAL CLAIM INVOLVING INSUFFICIENCY OF THE EVIDENCE - GROUND SIX

According to the Petitioner, the evidence was insufficient to convict him of first degree rape.  Mr. Brown relies on:

- the alleged lack of evidence involving penetration,

- inconsistencies in the victim's testimony, and

- a prior consensual sexual relationship with the victim.

Petition at p. 10; Petitioner's Brief in Support at pp. 32-33.

On independent review, the Court should reject this claim for habeas relief.  *See supra* p. 2.[33]

When the sufficiency of evidence is challenged in a habeas action, the federal district court must determine "whether, after viewing the evidence in the light most favorable to the

---

[32]    *See Chavez v. McKinna*, 41 Fed. Appx. 319, 321-22 (10th Cir. May 23, 2002) (unpublished op.) (rejecting a habeas claim involving a venireperson's bias because she had been "removed by a peremptory challenge and . . . Petitioner ha[d] failed to establish that there were any biased jurors actually sitting [on the jury]" (citations omitted)).

[33]    The OCCA held that this claim had been waived and did not reach the merits.  *See* OCCA Opinion on Post-Conviction Appeal, *passim.*

prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). This review is "sharply limited," and federal courts are not to weigh conflicting evidence or consider the credibility of witnesses. *Messer v. Roberts*, 74 F.3d 1009, 1013 (10th Cir. 1996).

The standard for sufficiency of the evidence "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Jackson v. Virginia*, 443 U.S. 307, 324 & n.16 ( 1979). Therefore, the Court must consider Oklahoma law in connection with the habeas claim.

Under Oklahoma law, the State had to prove:

- sexual intercourse,

- with a person who was not the spouse of [Mr. Brown],

- where force or violence was used against [Ms. Sims] and [Mr. Brown] had the apparent power to carry out the threat of force or violence.

*See* Okla. Stat. tit. 21 § 1111(A)(3); *see also* OUJI-CR 4-120 (2d ed.); *see also supra* p. 12. "Sexual intercourse" involves "vaginal . . . penetration." *See* Okla. Stat. tit. 21 § 1111(A). "Proof of any penetration, however slight, is sufficient." *Warner v. State*, 144 P.3d 838, 863 (Okla. Crim. App. 2006).

At trial, Ms. Sims testified that Mr. Brown had "put his penis in [her] vagina." Trial Transcript at pp. 29, 31. Similarly, Mr. Brown testified that he and Ms. Sims had engaged in sex until he "pulled out and . . . ejaculated on the sheet and the pillowcase." *Id.* at p. 118.

The testimony by Ms. Sims and Mr. Brown would allow a reasonable jury to find the element of penetration.

The Petitioner argues that D.N.A. tests were negative. Petitioner's Brief in Support at p. 33. But neither the constitution nor Oklahoma law requires D.N.A. evidence for a rape conviction.[34]

As noted above, even slight penetration would suffice for guilt under Oklahoma law. *See supra* p. 28. Mr. Brown testified that he "pulled out" prior to ejaculation, and Ms. Sims testified that he had "put his penis in [her] vagina." Trial Transcript at pp. 29, 31, 118; *see supra* p. 28. This testimony would have allowed a reasonable jury to find the element of penetration.[35]

The Petitioner questions Ms. Sims' credibility based on inconsistencies in her testimony and the existence of a sexual relationship. Petitioner's Brief in Support at p. 33; *see supra* p. 27. These facets of the evidence involved credibility in the accounts given by Ms. Sims and Mr. Brown. But as noted above, the Court cannot consider credibility on a

---

[34]     *See Ware v. Parker*, 298 Fed. Appx. 727, 729 (10th Cir. Oct. 29, 2008) (unpublished op.) (holding that for a conviction on first degree rape under Oklahoma law, "'physical' evidence - such as DNA test results" - was not necessary); *see also Sullivan v. Bruce*, 44 Fed. Appx. 913, 916 (10th Cir. Aug. 8, 2002) (unpublished op.) ("The constitution does not require an attempted rape conviction to be supported by DNA evidence."); *see generally Matthews v. Workman*, ___ F.3d ___, 2009 WL 2488142, Westlaw op. at 8 (10th Cir. Aug. 17, 2009) (to be published) (rejecting a habeas petitioner's challenge to the sufficiency of the evidence because *Jackson v. Virginia* does not require DNA evidence to support a criminal conviction).

[35]     *See Peters v. Whitley*, 942 F.2d 937, 941-42 (5th Cir. 1991) (holding that a mentally challenged woman's testimony that the petitioner had put his "'thing in'" her was sufficient for the jury to find sexual penetration despite the absence of physical evidence).

habeas claim involving sufficiency of the evidence.  *See supra* p. 28.  As a result, the

Petitioner's arguments on testimonial inconsistencies and a prior sexual relationship would

not affect the sufficiency of evidence on guilt.  *See Matthews v. Workman*, ___ F.3d ___,

2009 WL 2488142, Westlaw op. at 6-7 (10th Cir. Aug. 17, 2009) (to be published).[36]  These

arguments are invalid, and the Court should reject the related habeas claim involving

sufficiency of the evidence on guilt.

FEDERAL CLAIM INVOLVING CUMULATIVE
ERROR - GROUND SEVEN

The Petitioner also seeks federal habeas relief based on cumulative error.  Petition at

p. 11; Petitioner's Brief in Support at pp. 33-34.  This claim should be rejected.

---

[36]     In *Matthews v. Workman*, the habeas petitioner challenged sufficiency of the evidence based in part on testimonial inconsistencies on the part of prosecution witnesses.  *See Matthews v. Workman*, ___ F.3d ___, 2009 WL 2488142, Westlaw op. at 6-7 (10th Cir. Aug. 17, 2009) (to be published).  The Tenth Circuit Court of Appeals rejected the argument.  *Id*.  In discussing the inconsistencies by one witness, the court explained:

> [The petitioner] points to purported inconsistencies between Mrs. Short's testimony at the first trial and her testimony at the second trial.  But in a sufficiency challenge, the pertinent question is whether the evidence introduced at the trial resulting in the defendant's conviction is sufficient to allow a rational trier of fact to convict.  Of course, defense counsel was free to attempt to impeach Mrs. Short at the second trial by pointing to inconsistencies between her testimony then and at the first trial.  And, the jury was free to disbelieve Mrs. Short on account of those putative inconsistencies.  But all that proves is that a rational juror *might not* accept Mrs. Short's testimony at the second trial; it doesn't show that a rational juror *could not* accept it, which is the question on which a sufficiency challenge necessarily must focus.

*Id*, 2009 WL 2488142, Westlaw op. at 7 (emphasis in original).

30

"'A cumulative-error analysis merely aggregates all the errors that individually have been found to be harmless, and therefore not reversible, and it analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless.'"  *Miller v. Mullin*, 354 F.3d 1288, 1301 (10th Cir. 2004) (*per curiam*; citation omitted).  But this inquiry applies only when two or more constitutional errors have been committed.[37]

Mr. Brown has not shown two or more constitutional errors.  *See supra* pp. 5-30.  As noted above, the Court may assume *arguendo* that the state district court had erroneously allowed the prosecutor to comment on Mr. Brown's silence.  *See supra* p. 16.  But Mr. Brown's attorney had already told the jury of the same fact and the alleged error would have been harmless in itself.  *See supra* pp. 16-17.  As discussed above, Mr. Brown has not identified any other constitutional errors that would have combined to create prejudice.  *See supra* pp. 5-15, 7-30.  Thus, the Court should decline to grant habeas relief based on cumulative error.[38]

---

[37]    *See Hoxsie v. Kerby*, 108 F.3d 1239, 1245 (10th Cir. 1997) ("Cumulative-error analysis applies where there are two or more actual errors." (citation omitted)); *Young v. Sirmons*, 551 F.3d 942, 972 (10th Cir. 2008) ("in the federal habeas context, cumulative error analysis applies only to cumulative constitutional errors" (citation omitted)), *petition for cert. filed* (U.S. July 23, 2009).

[38]    *See Hain v. Gibson*, 287 F.3d 1224, 1244 (10th Cir. 2002) ("Although Hain has asserted a cumulative error argument, it is without merit since he has failed to identify multiple constitutional violations arising at trial." (citation omitted)).

FEDERAL CLAIM INVOLVING INEFFECTIVE
ASSISTANCE OF COUNSEL - GROUND FOUR

Mr. Brown alleges ineffective assistance of counsel.  Petition at pp. 8-9; Petitioner's

Brief in Support at pp. 27-30.

According to the Petitioner, his trial attorney was ineffective for:

- failure to object when the prosecutor called Mr. Brown a liar, and

- advising Mr. Brown to allow the trial court to set his sentence.

Petition at p. 8; Petitioner's Brief in Support at pp. 27-28.  On independent review, the Court

should reject Mr. Brown's claim of ineffective assistance of trial counsel.[39]

The Petitioner also accuses the his appellate attorney of ineffectiveness for failure to:

- address "the most pertinent, important . . . examples of ineffectiveness of trial
  counsel,"

- challenge the decision to allow participation by two biased jurors, and

- give Mr. Brown an opportunity to review the direct appeal brief before filing.

---

[39]    The OCCA held that the ineffective assistance of trial counsel claims had been waived on appeal and did not review the allegations on the merits.  OCCA Opinion on Post-Conviction Appeal at p. 2.

Petitioner's Brief in Support at pp. 29-30.[40]  The OCCA rejected the claim of ineffectiveness on the part of appeal counsel,[41] and this decision constituted a reasonable application of Supreme Court precedents.

I.      Standard for Ineffective Assistance of Counsel

To establish ineffective assistance of counsel, a petitioner must show that the attorney's performance was constitutionally deficient and prejudicial.  *See Strickland v. Washington*, 466 U.S. 668, 690-91 (1984).  "[P]rejudice" involves "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.

II.     Ineffectiveness of Trial Counsel

The federal district court should reject Mr. Brown's habeas claim involving ineffectiveness of trial counsel.

---

[40]     In his argument on ineffective assistance of counsel, the Petitioner states: "For Mr. Brown's sentence to be wrongfully enhanced and then unchallenged results in a fundamental miscarriage of justice . . . ."  Petitioner's Brief in Support at p. 30.  The Court cannot tell whether this statement is intended as a criticism of trial counsel or appellate counsel.  Either way, the comment does not supply enough information for meaningful review.  For example, Mr. Brown has not challenged the enhancement of his sentence either in the state court or in his federal habeas petition, and he has not explained his assumption that the sentence had been illegally enhanced.  Without further information, the federal district court cannot assess the validity of the claim or the potential prejudice.  *See, e.g.*, *Cannon v. Gibson*, 259 F.3d 1253, 1262 n.8 (10th Cir. 2001) (stating that the "conclusory assertion [in the habeas petition] that counsel was ineffective, along with a bald reference to *Strickland v. Washington* . . . is simply not sufficient to preserve this claim"); *see also supra* note 30.

[41]     OCCA Opinion on Post-Conviction Appeal at pp. 2-3.

A.      Trial Attorney's Failure to Object to the Prosecutor Calling Mr. Brown a
        "Liar"

In closing argument, the prosecutor referred to an improbable statement that Mr.

Brown had made during his testimony and argued:  "So why do you lie about something

trivial like that?  Because you're just in the habit of lying and you're just going to keep on

lying."  Trial Transcript at p. 184.  According to the Petitioner, his trial attorney committed

constitutional error when he failed to object to the comment.  *See supra* p. 32.  But Mr.

Brown cannot show prejudice from the failure to object.

The Petitioner raised the underlying claim on direct appeal, and the OCCA held that

the state district court had not committed plain error in allowing the comment.  OCCA

Opinion on Direct Appeal at pp. 2-3.  The OCCA reasoned that "[t]he prosecutor's . . .

arguments were fair comments on the evidence."  *Id.* at p. 3; *see supra* p. 17; *see also supra*

p. 22.

On habeas review, the issue is whether the OCCA would have found prejudicial

deficiencies on the part of trial counsel based on his failure to object to the prosecutor's

argument.  *See supra* p. 33.  The federal district court is aided by the OCCA's ultimate

conclusion that the prosecutor's argument involved a fair comment on the evidence.  *See*

*supra* pp. 17, 22.  The OCCA did make that determination based on a standard involving

plain error.  *See supra* p. 22.  But there is no reason to believe that the OCCA would have

reached a different conclusion if it had reviewed the prosecutor's argument under a standard

more rigorous than that of plain error.  *See Miller v. Mullin*, 354 F.3d 1288, 1296 & 1299

(10th Cir. 2004) (*per curiam*);[42] *see also Matthews v. Workman*, ___ F.3d ___, 2009 WL 2488142, Westlaw op. at (10th Cir. Aug. 17, 2009) (to be published).[43]  As a result the lack of an objection was not prejudicial, foreclosing habeas relief based on defense counsel's silence when the prosecutor had allegedly referred to Mr. Brown as a "liar."

      B.    Trial Counsel's Advice to Allow the Trial Judge to Determine the Sentence

After the finding of guilt, Mr. Brown waived a jury for sentencing and agreed to allow the trial judge to decide the penalty.  *See* Trial Transcript at p. 194.  Mr. Brown testified that the decision to do so was of his own free will.  *See id.*  After noting that the minimum sentence was 20 years on each count, the trial court sentenced the Petitioner to concurrent 25-year sentences.  *See id.* at pp. 194, 201, 205.  According to Mr. Brown, his trial attorney was ineffective for recommending this course of action.  *See supra* p. 32.

When determining the constitutionality of an attorney's advice, the Court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable

---

[42]    In *Miller v. Mullin*, a petitioner sought habeas relief based in part on the prosecutor's use of transparencies and defense counsel's failure to object.  *See Miller v. Mullin*, 354 F.3d at 1293-95, 1297.  In upholding the denial of habeas relief, the Tenth Circuit Court of Appeals held that the state appellate court had reasonably applied federal law in holding that use of the transparencies did not constitute plain error.  *Id.* at 1296.  Because the transparencies did not involve plain error, the petitioner could not establish a reasonable probability of acquittal if his attorney had lodged a timely objection.  *Id.* at 1299.

[43]    In *Matthews v. Workman*, the OCCA had applied the "plain error" standard to a claim involving prosecutorial misconduct.  *See Matthews v. Workman*, ___ F.3d ___, 2009 WL 2488142, Westlaw op. at 8 n.4 (10th Cir. Aug. 17, 2009) (to be published).  But in applying this standard, the OCCA concluded that none of the prosecutor's comments had constituted "error."  *See id.*  As a result, the Tenth Circuit Court of Appeals applied the deferential AEDPA standard even though the OCCA had considered the prosecutorial misconduct claim under the "plain error" standard.  *Id.*, ___ F.3d ___, 2009 WL 2488142, Westlaw op. at 8 & n.4 (10th Cir. Aug. 17, 2009) (to be published).

professional assistance[.]"  *Strickland v. Washington*, 466 U.S. 668, 689 (1984).  Thus, Mr.

Brown "must overcome the presumption that, under the circumstances, the challenged action

'might be considered sound trial strategy.'"  *Id.* (citation omitted).  The Petitioner cannot

overcome this presumption.

Mr. Brown acknowledges that trial counsel was afraid that the jury would decide on

"too much time."  Petitioner's Brief in Support at p. 28.  The present claim is based on Mr.

Brown's "honest[] belie[f]" that the jury would have been more lenient than the judge.  *Id.*

This opinion is insufficient to overcome the strong presumption that the trial attorney was

exercising sound trial strategy and does not support a reasonable probability that the

Petitioner's sentences would have been shorter but for the advice.  Consequently, Mr. Brown

cannot show ineffective assistance of counsel on this issue.[44]

The Tenth Circuit Court of Appeals addressed a similar issue in *Hatch v. State of*

*Oklahoma*, 58 F.3d 1447 (10th Cir. 1995), *overruled in part on other grounds*, *Daniels v.*

*United States*, 254 F.3d 1180, 1188 n.1 (10th Cir. 2001) (*en banc*).  The petitioner waived

his right to a jury trial, and the trial judge imposed a death sentence.  *See Hatch v. State of*

*Oklahoma*, 58 F.3d at 1451-52.  In a habeas action, the petitioner alleged ineffective

assistance of trial counsel for advising waiver of a jury trial.  *See id.* at 1459.  In support, the

petitioner stated that a jury would not have imposed a death sentence and that the attorney's

---

[44]     *See Taylor v. Horn*, 504 F.3d 416, 449-50 (3d Cir. 2007) (rejecting a habeas claim, involving
ineffective assistance for waiver of a jury in the sentencing phase, based on the absence of
prejudice), *cert. denied*, __ U.S. __, 129 S. Ct. 92 (2008).

strategy was "'inane.'" *Id.* The Tenth Circuit Court of Appeals rejected the claim. *Id.* The court began with recognition that "[a]n attorney's decision to waive his client's right to a jury is a classic example of a strategic trial judgment, 'the type of act for which *Strickland* requires that judicial scrutiny be highly deferential.'" *Id.* (citation omitted). The petitioner believed that a jury would have imposed a milder sentence, but this belief did not provide any "basis to conclude that counsel's decision was unreasonable." *Id.*

The same is true here. The prosecutor urged consecutive sentences of 30 years, and Mr. Brown's counsel requested concurrent terms of 20 years. Trial Transcript at pp. 199-200. The judge ultimately imposed concurrent terms of 25 years. *Id.* at p. 205. Like the petitioner in *Hatch*, Mr. Brown believes that a jury would have imposed a lesser sentence. But like the petitioner in *Hatch*, Mr. Brown has not provided any reason to characterize defense counsel's strategy as unreasonable. The result was denial of habeas relief in *Hatch*, and the same outcome is appropriate here.

III.    Ineffectiveness of Appellate Counsel

The Court should also reject Mr. Brown's claim involving ineffective assistance of counsel on appeal.

A.    The AEDPA's Deferential Standard of Review

In the post-conviction appeal, the OCCA rejected the claim and reasoned that Mr. Brown had not shown deficiencies or prejudice from his representation in the direct appeal. OCCA Opinion on Post-Conviction Appeal at pp. 2-3.

As noted above, the threshold inquiry is whether the Supreme Court has clearly established federal law on this claim.  *See supra* p. 3.  The federal district court should answer in the affirmative based on the Supreme Court's articulation of the constitutional test in *Strickland v. Washington.*[45]

Application of the AEDPA's deferential standard is affected by the relative specificity of the Supreme Court's standard.  *See supra* p. 4.  The *Strickland* standard is expressed in general terms, resulting in latitude for the manner in which the OCCA had analyzed Mr. Brown's claim of ineffective assistance on appeal.  As the Supreme Court recently stated:

> And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.

> Under the doubly deferential judicial review that applies to a *Strickland* claim evaluated under the § 2254(d)(1) standard, [the habeas petitioner's] ineffective-assistance claim fails.

*Knowles v. Mirzayance*, ___ U.S. ___, 129 S. Ct. 1411, 1420 (2009) (citations omitted).

B.    Application of the AEDPA's Deferential Standard

The Petitioner's criticism of appellate counsel is based on the omission of constitutional claims.  Petitioner's Brief in Support at pp. 28-30.  But as discussed above, these claims are invalid on the merits.  *See supra* pp. 5-30.  The invalidity of the underlying

---

[45]    *See Hooper v. Mullin*, 314 F.3d 1162, 1170 n.3 (10th Cir. 2002) (stating that for purposes of the deferential AEDPA standard in habeas actions, "*Strickland*'s objectively reasonable standard is the clearly established Supreme Court precedent for ineffective assistance claims"); *see also Williams v. Taylor*, 529 U.S. 362, 391 (2000) ("It is past question that the rule set forth in *Strickland* qualifies as 'clearly established Federal law, as determined by the Supreme Court of the United States.'").

constitutional claims could reasonably have led the OCCA to find no prejudice from the omissions in the direct appeal.  Indeed, in rejecting Mr. Brown's post-conviction appeal, the OCCA reasoned that Mr. Brown "ha[d]n't established that the result of his appeal would have been different" with inclusion of the additional arguments.  OCCA Opinion on Post-Conviction Appeal at p. 3.

For example, the Petitioner contends that his appellate counsel was ineffective for failure to raise the "most pertinent, important issues and examples" of trial counsel's ineffectiveness.  Petitioner's Brief in Support at p. 29; *see supra* pp. 32-33.  Presumably, those "pertinent" and "important" issues are the alleged deficiencies characterized in the habeas petition as ineffective assistance of trial counsel.  As noted above, however, trial counsel was not ineffective for purposes of *Strickland*.  *See supra* pp. 33-37.  Thus, appellate counsel could not be regarded as ineffective for failure to assert ineffective assistance at trial.[46]

Mr. Brown also believes that his appellate attorney should have allowed him to review the direct appeal brief before it was filed.  Petitioner's Brief in Support at p. 29.  With the opportunity to review the draft in advance, the Petitioner suggests that he would have "insist[ed] on . . . other more appropriate and relevant issues."  *Id.*  Although Mr. Brown does not identify those issues, the Court may presume that he is referring to the habeas claims omitted in the direct appeal.  These claims involve: (1) participation of two biased jurors; (2)

---

[46]     *See Massingale v. Cody*, 61 F.3d 916, 1995 WL 434832, Westlaw op. at 1 (10th Cir. July 25, 1995) (unpublished op.) (holding that because an evidentiary ruling was not erroneous, trial and appellate counsel were not ineffective for failure to raise the issue).

insufficiency of the evidence; and (3) cumulative error.[47] But the two venirepersons did not participate on the jury, the evidence was sufficient for a conviction, and there were not multiple errors committed at trial. *See supra* pp. 5-15, 17-30.

In rejecting Mr. Brown's claim of ineffective assistance on appeal, the OCCA reasonably applied *Strickland*. As a result, the federal district court should reject the Petitioner's related habeas claim.

## RECOMMENDATION AND NOTICE OF THE RIGHT TO OBJECT

The Court should deny the Petitioner's request for a writ of habeas corpus.

The Petitioner can object to this report and recommendation. To do so, Mr. Brown must file an objection with the Clerk of this Court by October 1, 2009. *See* W.D. Okla. LCvR 72.1. The failure to timely object would foreclose appellate review of the suggested ruling.[48]

## STATUS OF THE REFERRAL

The referral is terminated.

---

[47] Petition at p. 9 (absence of an appeal on the claim involving participation of two biased jurors), p. 10 (absence of an appeal on the claim involving insufficiency of the evidence), p. 11 (absence of an appeal on the claim involving cumulative error).

[48] *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *see also Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996) ("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

Entered this 10th day of September, 2009.

Robert E. Bacharach
United States Magistrate Judge